50 | 331
151 | 617

# The Columbia Insurance Company *versus* Cooper.

*Insurance.*—*Competency of insurance agent as witness for assured in action on policy.*—*Agent of mutual insurance company, when not agent for party assured.*—*Insurable interest discussed.*—*What misrepresentations as to ownership are fraudulent.*

1. Where an applicant for insurance on machinery in a mill, when inquired of as to encumbrances, answered that there were none, except that the premises were under lease, adding that there were judgments on the land, but he did not think them liens on personal property, in which the agent concurred, and returned to the company the application with the answer that there were no encumbrances, but that the premises were leased; the agent was held a competent witness for the assured in an action against the company after loss by fire, in the absence of a covenant in the policy that made the answer of the assured a warranty.

2. Thus where the policy contained no such covenant, the mistaken answer was held a representation only, and not a breach of covenant, making void the policy: and the agent was therefore not incompetent, on the ground that his testimony tended to contradict and impair the alleged covenant on the part of the assured as to encumbrances.

3. A stipulation in a policy that if any agent of the company, in the transaction of their business, should violate the conditions, the violation shall be construed to be the act of the assured and shall avoid the policy, will not render the assured responsible for the mistakes of the agent; nor, though the company was mutual, can the assured be regarded as a member of the company, so that before the granting of the insurance, the agent of the company became his agent, and could bind him by his acts.

4. The assured, as owner of the greater portion of the machinery, to an amount far exceeding the insurance, and as landlord of the factory in which, together with his own, there was some machinery owned by a third person when the policy was granted, which before the loss he had seized under a landlord's warrant and bought in, has an insurable interest in the whole; and he is not guilty of fraud in not disclosing such other ownership when applying for insurance.

ERROR to the Common Pleas of *Lancaster county*.

This was an action of covenant by William P. Cooper against The Columbia Insurance Company, on a policy of insurance against fire.

The material facts were as follows:—

November 1st 1861, William P. Cooper made application to the agent of the Columbia Insurance Company—a mutual one—for an insurance on "machinery used in the manufacture of cotton and woollen goods, contained in the stone building known as the Georgetown Factory;" the agent sent the application to the company by mail, and a policy was sent to Cooper for $1000, dated November 5th 1861. The property was destroyed by fire, July 7th 1862; Cooper presented an inventory and a valuation of machinery burnt amounting to $6785. The statements made in the application constituted the only information given to the company. The company, after the fire, were informed that at the

[Columbia Insurance Co. v. Cooper.]

time of the application and issuing of the policy, John Thornton was the lessee of the factory, and owned a considerable portion of the machinery, which the constable, under a landlord's warrant issued by Cooper for rent in January 1862, had distrained and sold, Cooper becoming the .purchaser. This property also was burnt, and its value embraced in Cooper's claim. Cooper stated the machinery to be his own; and omitted to state the fact of any one owning any portion of it. He valued it at $8000, and to the inquiry, "What encumbrances on the property?" he answered, "None." The policy contained these provisions: "Reference being had to the application of the insured for a particular description, and which shall form a part of this policy." "If any person insuring any building or goods in this company shall make any misrepresentation or concealment * * * such insurance shall be void." "Property held in trust or on commission must be insured as such." "If the interest in the property to be insured be a leasehold interest, or other interest not absolute, it must be so represented." "Any misrepresentation or conceal-ment, fraud or false swearing, shall cause a forfeiture of all claims on the insurers, and shall be a full bar to all remedies against this company under the within policy;" and there shall be no waiver by the company of any of the terms of the policy, unless the waiver be in writing and signed by the secretary. "And if any agent of this company, in the transaction of their business, shall assume to violate these conditions, such violation shall be construed to be the act of the insurer, and shall render void this policy." At the time of the application and policy, the judgments against Cooper amounted to nearly $9000; which it was alleged were liens on this machinery, as it was fixed to the freehold owned by Cooper. The defence was that the statements in the application were war-ranties, and that as they were untrue as to value, ownership, and liens, there could be no recovery.

On the trial, the plaintiff called Theodore W. Herr, and offered . to prove by him, that he was the agent of the defendant, and was advertised as such. That Mr. Cooper called upon him to effect an insurance upon the machinery mentioned in his applica-tion; that Mr. Herr had this application; that he asked the ques-tions contained in it verbally, received verbal answers thereto, and wrote down the answers in his own proper handwriting. When he asked Mr. Cooper the question whether there were any encum-brances upon this property, Mr. Cooper told him there were judg-ments against his whole property to the amount of about $10,000; he did not know whether the judgments would bind this property or not. Mr. Herr replied that it was not such an encumbrance as was contemplated in the interrogatory, and wrote down the answer accordingly.

This was objected to by defendant.

[Columbia Insurance Co. *v.* Cooper.]

Before deciding the above question, the court directed the witness to be examined as to the nature and extent of his agency; to which the witness responded, " My agency was in writing." (Shown paper.) " This is it."

Paper offered for the purpose of showing his agency.

" I advertised my agency by means of a card. When Mr. Cooper called to make the insurance, I did not show him my authority. I took the application, but did not give him the policy. I sent the application to Columbia; the officers sent the policy to me. I told Mr. Cooper I would send the application for their refusal or acceptance."

The testimony was then admitted, the court reserving the point as to whether there is a warranty or a representation.

The plaintiff requested the court to charge the jury :—

1. If the jury believe Mr. Cooper, the plaintiff, made fair and honest statements to defendant's agent, when he applied for his insurance, and his loss has been proved, the jury are bound to find for the plaintiff.

2. To create a forfeiture of a policy of insurance, on the ground of fraud contained in erroneous statements, the jury must believe that such statements were made knowingly and wilfully, with intention to defraud existing in the mind of the party at the time such statements were made.

3. To prevent recovery on the part of the plaintiff on the ground of misrepresentation or concealment on the part of the assured, the jury must believe that the fact alleged to be concealed or misrepresented was material to the risk.

4. Notice to the agent of the company of encumbrance, was sufficient notice to the company, and if the jury believe that the plaintiff gave notice to defendant's agent of the judgments against his property, that notice is sufficient, and plaintiff is entitled to recover.

The defendant submitted the following points on which the instruction of the court was requested :—

1. The statements made in the application for insurance, in answer to the interrogatories therein contained, being referred to in the policy and made a part thereof, constitute warranties.

2. If the jury believe that an important part of the machinery embraced in the plaintiff's application for insurance, belonged at the time of his application to John Thornton, a fact within the plaintiff's knowledge, the misrepresentation in regard to it is fatal to the validity of the policy, and the plaintiff cannot recover in this action.

3. The subject of insurance in this case was fixed machinery, part of the freehold, and encumbered by the judgments previously entered against the plaintiff. His representation to the company that it was not encumbered, contained in his application, was false,

and the policy issued thereon is hereby rendered absolutely void and of no effect, and the plaintiff cannot recover in this action thereon, and the verdict must be for the defendant.

The court below (LONG, P. J.) charged the jury as follows:—

"The execution of the policy is admitted, and also the burning of the property insured, but it is contended that the plaintiff has not complied with the conditions annexed to the policy and which are made part of that instrument. It is unnecessary to inform you that when a person enters into a contract, before he can enforce the performance of it, it is necessary that he should show that he has faithfully performed his part of the contract, and if the defendant has neglected to do so in any material part, he must fail in his effort to cause the defendant to respond to his claim. It is alleged that the plaintiff, when he filed his application for an insurance, deceived the defendant in important matters, by representing the property insured of much greater value than it really was. The testimony in regard to this matter as to the value of the property is not uniform; the witnesses differ in their estimates of the value thereof; [it is also asserted that he was not the owner of the whole of the property included in the mill, and for which he obtained an insurance; with regard to this matter, testimony has been given to show that a tenant of the plaintiff named Thornton had some machinery in the mill, and included in the insurance; the answer of the plaintiff is, that if such was the case, the plaintiff as landlord had a lien upon the articles, which gave him a qualified interest in the same;] another portion of the defence is, that the plaintiff by one of the conditions of the policy was to give an account of all encumbrances existing against the property insured, and that he failed to do so, and that while he represented there were no encumbrances against him, there were really existing against him judgments nearly to the amount of $10,000; with regard to this omission, you will bear in mind the testimony of the agent of the company, Mr. Herr; according to his testimony, when the interrogatory relative to this matter was propounded to him by the agent of the company, the plaintiff stated that there were judgments against him, but supposed that they were not liens upon the property proposed to be insured, and then referring the question to the agent, the agent seemed to concur in that opinion, and thus between them they seem to have formed the opinion that the judgments were no liens upon the machinery proposed to be insured, and it was then the plaintiff concluded to answer that interrogatory in the negative. With regard to my views of the law upon the defence set up now, I will call the attention of the jury to my answers to the several points propounded to the court by the parties, remarking here, however, generally, that [if the plaintiff acted through mistake or misapprehension, stating himself what he believed to be

[Columbia Insurance Co. *v.* Cooper.]

the truth, and not fraudulently and for the purpose of deceiving the defendant, the plaintiff can recover.]''

The points of plaintiff and defendant were answered as follows:—

'' As to points of plaintiff—1, 2, and 3. If the jury believe from the testimony that the plaintiff at the time he made the application for an insurance for the property which was destroyed by fire, and which was covered by the policy of insurance now in dispute, made a fair and honest statement to the defendant's agent of what was required of him, the plaintiff can sustain this action, and is entitled to recover the loss which he has sustained; to sustain a forfeiture of a policy of insurance on the ground of fraud, the erroneous statements upon which such misstatements were made, it ought to appear that such statements were made wilfully, and with the design to injure the defendant, or that he fraudulently suppressed or concealed some fact material to the risk, and the jury are to judge of the materiality of such facts; in a case of that kind mere mistakes or misapprehension of facts will not vitiate the policy.

'' 4. If the plaintiff, at the time of his application for an insurance, made a fair and honest representation of the encumbrances existing against the property insured to the agent of the company, and they were not returned to the company by their agent, through mistake, inadvertence, or misapprehension of his duties, such omission will not avoid the policy.''

The answers to defendant's points were as follows:—

'' 1. With regard to the question propounded in this point it is reserved for the decision of a full court, and if they should be of the opinion that the answers given by the plaintiff, in answer to the interrogatories when he made the application for the insurance, constitute a warranty, then judgment to be entered for defendant, *non obstante veredicto.*

'' 2. If, as stated by defendant in this point, the jury believe that the plaintiff suppressed the truth in regard to an important point, or part of the machinery embraced in the plaintiff's application, and that an important part of such machinery belonged at the time of his application to John Thornton, if such fact was known to plaintiff, and was concealed by plaintiff, and he made a wilful misrepresentation in regard to it, claiming the same belonged to him, for the purpose of deceiving the defendant, such misrepresentation would be fatal to the policy of insurance, and prevent a recovery in this case.

'' 3. The machinery insured and for the loss of which an indemnity is now claimed, being part of the freehold, the judgments existing at the time of the insurance against the plaintiff were encumbrances against the machinery, and if the plaintiff at the time of making his application for an insurance, wilfully and for the purpose of deceiving the defendant, misrepresented that there

[Columbia Insurance Co. *v.* Cooper.]

were no judgments against him, such misrepresentations would avoid the policy."

Under the ruling of the court below there was a verdict and judgment in favour of plaintiff for $1122.

This writ was thereupon sued out by the defendant, for whom the admission of the testimony of Theodore W. Herr, the answers given to the points presented by the parties, and so much of the general charge as is printed above in brackets were assigned for error.

*T. E. Franklin* and *H. M. North*, for plaintiff in error.— Cooper stated in his application for insurance that he was the owner of the machinery; that it was worth $8000, and that there were no encumbrances on it. At that time Thornton owned machinery worth $1525. These articles were bought by Cooper in January 1862, and are embraced in his claim at the value stated. In his " proofs of loss," he values his own and Thornton's machinery at $6875; deduct Thornton's, and Cooper's is reduced in value to $5350; this is what he stated to be worth $8000, and on it obtained insurance to the amount of $4000—1000 in the Columbia Company, and $3000 in the York Company the same day. The over-estimate was more than fifty per cent. The judgments against him were nearly $9000.

In the policy reference is made to the application, and it made part of the policy. The effect is the same as if the statements had been spread on the face of the policy. The court treated them as representations, and submitted to the jury whether they were material to the risk, and made with intent to defraud. It seemed to be conceded that if they were warranties the plaintiff could not recover. Were they warranties?

Our policy makes the application part of it, and therefore an express warranty. See Angell on Insurance 184, 194; Wall *v.* Howard Insurance Co., 14 Barb. 383; Glendale Manufacturing Co. *v.* Protection Insurance Co., 21 Conn. 19. Representations are *dehors* the policy: Angell 197; State Insurance Co. *v.* Arthur, 6 Casey 316; Birmingham *v.* Insurance Co., 42 Barb. See Law Reg. (N. S.), Vol. 14, No. 2, p. 314. Nor can parol evidence be received of what the assured said to the agent, to vary the effect of the warranty: 6 Casey 315; Birmingham *v.* Insurance Co., 42 Barb. See also 2 Denio 79; 2 Seld. 53; 10 Barb. 289; 13 Mass. 99; 21 Conn.; 26 E. L. & Equity.

*A. H. Hood, O. J. Dickey, D. W. Patterson,* and *J. B. Livingston,* for defendant.—Plaintiff assumes that certain statements were made as to the value of the machinery, and that in those statements wilful over-estimates were made by the insured. This we deny. This was matter of dispute below, about which there was conflict of testimony. This was submitted by the court to

[Columbia Insurance Co. *v.* Cooper.]

the jury, and has been passed upon by them. The application makes no reference to any warranty, is in form and substance a representation, and was fairly and honestly made without intention or design to deceive. In the policy reference is made to the application for a more particular description of the property insured, and is stated to be made part of the policy for that purpose.

The fact of the existence of encumbrances was the subject of representation or warranty, but not matter of description to be inserted in the policy. The argument that because a policy of insurance refers to the application as a matter of description of the property insured makes such application a warranty, if carried to a logical conclusion, would make the articles of agreement for every sale of land, when consummated by deed, a warranty for the facts therein alleged, if they were referred to in the deed, for the courses and distances of the survey. This application was a representation, and was properly so treated below so far at least as referred to this question of encumbrance.

Even if the application is to be treated as a warranty, it is open in equity to explanation on the ground of fraud or mistake. There are decisions which seem to treat these warranties to insurance companies with greater consideration than any other species of written contract, and endeavour to hedge them round in such way as they may not be touched or inquired into. But the more recent decisions of the courts, especially in those states of long experience in dealing with mutual fire insurance companies, treat contracts for fire insurance on the same terms and apply the same principles of construction and reformation where equity requires it, that they do to other written contracts.

When Cooper applied to the agent for insurance he fully stated the encumbrances, but the agent was of opinion that judgments were not encumbrances, and wrote the answer accordingly. It is clear there was a mistake. Can such mistake be corrected? We think it can. It seems to be admitted that if the statement had been made directly to the company, and the error made, it could be, but it is denied that it can be with the agent.

Will it be said that an agent sent out with printed blanks for insurance, who advertises as an agent of the company, is paid as such by the company, takes from his bundle of applications one for the party desiring insurance, asks the questions required verbally, fills up the blank, gets the party to sign, and pockets his wages from the company for doing so, that in this act he is the agent of the insured? To allow such construction would be "little less than legalized robbery." See Master *v.* Madison, Mutual Insurance Co.. 15 Barb. 632.

It is contended that the agent's authority was limited to the receiving applications, paying out losses, and receiving premiums, and that before insurance could be finally effected, his report was

[Columbia Insurance Co. *v.* Cooper.]

to be submitted to other agents of the company. We had no notice of any limitation of his powers, but if we had we do not think it will avail the company. The agent certainly was to receive applications and report to the company; in doing so he was to elicit answers to certain questions; he was to write or see that the answers were written down; he was to understand the meaning and force of questions asked to furnish information to parties applying for insurance; technical words used in the business of insurance, printed in the forms used by the company, he should have been, and is to be deemed, competent to explain. He propounds the question, "What encumbrances, if any, are upon the property?" is answered, "There are judgments against the property, and it is leased to J. B. Hughes & Co." The question is submitted to him whether such judgments are encumbrances on machinery within the meaning of inquiry of the company. He decides they are not, and writes, "None;" but considers that the lease is an encumbrance, and writes, "Leased to J. B. Hughes & Co." It turns out that in law the judgments are encumbrances, and the lease is not: an incorrect answer is written in consequence of the ignorance, incapacity, and mistake of the agent, and the company attempt to shield themselves behind it from the payment of loss. They are bound, like all other parties who act by means of agents, for their acts, and are bound to select competent and skilled agents, and are responsible for their ignorance, want of skill, and mistakes in dealing with third parties in the transaction of their business.

Whether application is to be treated as a representation or warranty, it is clear that no fraud was intended; and if mistake was made, or error committed, at least both parties were in fault, and are estopped from complaining.

The following cases are referred to as ruling the principles involved in this case: Moliere *v.* Pennsylvania Insurance Co., 5 Rawle 342; Masters *v.* Madison County Insurance Co., 11 Barb. 624; 9 Id. 191; 11 Harris 56; 18 Ohio 116.

The opinion of the court was delivered, June 29th 1865, by

WOODWARD, C. J.—The insurance company objected to the testimony of Theodore W. Herr, their own agent, not on the ground of incompetency of the witness, but because his testimony tended to contradict and impair what they are pleased to call the covenant of the assured in respect to encumbrances. The policy was for $1000 on Cooper's machinery for the manufacture of cotton and woollen goods contained in a stone building, known as the "Georgetown Factory." In negotiating for the policy, Herr, as the agent of the company, presented the questions he was instructed to propound, one of which was, "What encumbrances on the property?" The answer he received and transmitted to the com-

pany was, " None.  The building and machinery is leased to J. Hughes, of Philadelphia."

This answer the company insisted upon treating, not as a representation which is open to explanation, but as a covenant of the policy which precludes all explanation, and a breach of which works instant forfeiture of the policy.  Most of the errors assigned relate to this point, and the language of the judge who delivered the opinion of this court in Arthur's Case, 6 Casey 331, and the ruling in Birmingham v. The Insurance Company, 42 Barbour, are relied upon to support the position.

The policy in Arthur's Case purported to have been made and accepted in reference to the written application, and the conditions thereto annexed, *both of which were declared in the body of the policy to be a part thereof, and the assured covenanted and engaged that the representations given in the application for the insurance was a warranty on his part,* and from the note we have of the case in Barbour, we infer the policy in that case was to the same effect.

It is very material to. observe that nothing of the' kind is found in the policy now before us.  This policy refers itself to the application for a more full description of the subject-matter of the insurance, but unlike that in Arthur's Case, it contains no express covenant of the assured, that makes his answers a warranty.   It does, however, subject the assured to " conditions" that are four times as voluminous as the policy itself, and which, if strictly construed, take back nearly all the policy grants, and leaves the assured about as empty-handed as he began.   One of these conditions very properly stipulates that " any misrepresentation or concealment, fraud or false swearing," shall cause a forfeiture of all rights under the policy ; but another of them is very cunning : " If any agent of this company, in the transaction of their business, shall assume to violate these conditions, such violation shall be construed to be the act of the insured, and shall render void this policy."

The company employed and paid Herr as an agent.  He was advertised as such to the world, and was furnished with blank applications.   When Cooper called on him, the answers were given verbally to the written and printed questions, and were written down by the agent. He says, " When I asked Mr. Cooper about encumbrances, his first answer was that there were none ; then he said directly, there are judgments against the real estate, but he supposed they were not liens upon the property insured, as that was personal. property.  I agreed with him, and was of the opinion that it was personal property, and the liens did not attach to it.   This conversation took place before I wrote the answer relating to encumbrances."

We think the court committed no error in admitting this evi-

dence. We have already said that there was no *covenant* against encumbrances, and whether there was any *misrepresentation* was fairly submitted to the jury. Informed that there were judgments, the attention of the agent was called directly to the question whether they were encumbrances upon the machinery insured? The doubt expressed by Cooper attracted Herr's attention to the subject, and he concurred in opinion that they were not encumbrances, and so wrote down the word "None." Now, as the verdict acquits Cooper of a wilful misrepresentation, is the mistake of judgment fairly chargeable upon him?

. When judgments are liens or encumbrances, is often a very nice question. They lose their lien in five years from their date; they are not liens on real estate acquired by the debtor subsequent to their entry; they are not liens upon his personalty. But whether a particular piece of real estate is subject to the lien of judgments, and whether chattels are so connected with that real estate as to be part of the freehold, are questions which Cooper did not profess to be able to answer, and which if the company wanted answered, they should have sent a competent agent to investigate them. Cooper was bound to answer in good faith; and he did so. But notwithstanding the above-cited condition, he was not responsible for the blunders of the agent. If the agent returned that there were no encumbrances, when he had been informed there were judgments and a lease to Hughes, he may have violated the "conditions"; but no company has a right to select and send out agents to solicit patronage and business for its benefit, and then to saddle their blunders upon its customers. If the assured combine with the agent to cheat the company, we protect the company; Smith *v.* The Ins. Company, 12 Harris 320; but if the assured have covenanted for nothing, and has been guilty of no misrepresentation, concealment, or fraud, the company had better pay his loss, than to attempt to make him responsible for the blunders of their own agent.

But it was argued that Cooper became a member of the company by virtue of his insurance, and therefore the agent was his agent. The charters of these mutual companies do make the assured members, but I take it, membership does not begin till the contract is complete, and the policy issued. As to all preliminary negotiations, the agent acts only on behalf of the company, and the distinction between the agent and the assured is distinctly marked by the company itself in its regulations and conditions. In the company's attempt to charge all the transgressions of its agents to the account of the assured, there is a very striking recognition of the relations of the parties.

The answer of the court as to Thornton's ownership of part of the machinery, was all that the occasion called for. Cooper, the admitted owner of most of the machinery, and the landlord of the

[Columbia Insurance Co. v. Cooper.]

factory, disclosed the facts of a tenancy in Hughes, and proved that the machinery consumed greatly exceeded the policy, besides that granted by another company for $3000. He was entitled to seize all the machinery Thornton had on the premises for his rent, and it could not be severed from the freehold to his prejudice. He had therefore an insurable interest in all the machinery, and there was no fraud in not disclosing Thornton's interest.

The court put the cause to the jury upon the true ground, that of good faith and fair dealing. It was not a case depending on the covenants of the assured, but on his honesty and truthfulness, and we see nothing in the rulings to correct.

The judgment is affirmed.